OPINION OF THE COURT
Peter N. Wells, S.
This is a petition for reformation of an inter vivas trust. The donor, John O. Bickel, died on April 26, 1991. Petitioner, Marine Midland Bank, N. A., is the trustee of the trust which was created by agreement dated June 22, 1978. The only parties interested in this proceeding are the trust beneficiary, decedent’s sister, and Dartmouth College, a contingent remainderman of the trust. The Attorney-General has also been *635 cited. No objections to the relief requested by petitioner have been received.
Petitioner requests that the trust be reformed so that the contingent remainder interest of Dartmouth College will qualify as a charitable remainder unitrust and thus qualify as a charitable deduction on the estate tax return of decedent. Petitioner proposes that this be accomplished by placing $75,000, the amount of the contingent interest of Dartmouth College, into a separate trust, with the trustee having no right to invade the principal of the new trust on behalf of the decedent’s sister, the income beneficiary thereof.
There is no question that this court has the authority to determine matters relating to lifetime trusts. (SCPA 209 [6].) A trust can be reformed when the reformation is consistent with the intentions of the decedent and consistent with decedent’s over-all plan. Although such relief is now common, it is not automatic. Thus, before reforming a trust to qualify for a charitable deduction, the court must be satisfied that a paramount intention of the donor was to benefit charity and that the proposed reformation does not alter the intentions of the donor. (Estate of Cohn, NYLJ, Feb. 25, 1993, at 24, col 5; Matter of Kander, 115 Misc 2d 386.)
Petitioner has submitted, in addition to the 1978 trust document, a 1990 trust document dated July 18, 1990 and decedent’s last will and testament also dated July 18, 1990. Decedent’s intent can clearly be construed from all three documents.
It is clear from the 1978 document that decedent’s primary goal is to benefit individuals not charities. Indeed in the 1978 document, the primary beneficiary is decedent’s wife, who predeceased decedent, and the contingent beneficiary is decedent’s sister. The most remote beneficiary is Dartmouth College, whose interest is contingent on decedent’s sister’s death. The court notes that there are no additional charitable bequests in the 1978 trust document other than another remotely contingent bequest to be added to the initial Dartmouth bequest if certain contingencies take place.
By the reformation requested, Dartmouth College would, in essence, become a primary beneficiary. Decedent’s sister would effectively lose the benefit of the trustee’s power to invade the principal of the reformed Dartmouth College trust on her behalf. This appears to be in direct contradiction to decedent’s apparent intent to provide for his sister. Petitioner suggests *636 that because decedent’s sister remains the income beneficiary of the proposed charitable trust, her interest remains unchanged. The court finds this contention rather simplistic and easily envisions situations in which decedent’s sister, who is apparently frail and elderly, may require the principal of the trust for her daily needs.
It is clear that decedent’s wife had predeceased him by the time he executed his 1990 trust agreement and his 1990 will. The beneficiaries of the will and the 1990 trust are not the same as the beneficiaries of the 1978 trust. Indeed, decedent’s sister is not mentioned in either the 1990 trust or the will. It appears to the court that decedent’s silence as to his sister in these documents may well be attributable to his knowledge that he had already provided for her in the 1978 trust.
The court notes that decedent revised the 1978 trust agreement at least three times subsequent to 1978. He also created what appears to be a separate trust funded with completely different assets at the same time he executed his will in 1990. The level of sophistication evident in all of these documents indicates that decedent was or should have been aware of the tax consequences of his bequests and still chose to keep the 1978 trust agreement intact.
In fact, the court finds it quite telling that in Article IX of the 1978 trust agreement, the decedent specifically retained the right to revoke, amend or terminate said trust. Although in the 13 years between execution of the 1978 trust agreement and decedent’s death, he had ample opportunity to revoke or amend that trust, he obviously chose not to.
Additional support for decedent’s intent to leave the 1978 trust agreement as written lies in paragraph seventh of decedent’s will dated July 18, 1990 executed after the death of his wife (the primary beneficiary of the 1978 trust) wherein he specifically provides: "My Executor is advised that a portion of my assets are administered and, following my death, will be distributed pursuant to the terms of a Revised Trust Agreement dated June 22, 1978 of which Marine Midland Bank-New York is the Trustee. I hereby confirm all of the provisions of said June 22, 1978 Trust. The same shall not be affected by any provision of this Will. ” (Emphasis added.)
This language illustrates that not only was decedent aware of all the provisions of the 1978 trust, he reaffirmed them. By so doing decedent deliberately made the choice not to alter its terms. This court finds itself hard pressed to reform the 1978 *637 trust for any reason when decedent himself so explicitly chose not to do so.
Although the court is aware that it has discretion to allow reformation of an inter vivas trust after the death of the donor, permission to do so cannot be obtained merely by asking. In such situations it is incumbent upon the petitioner to show that the proposed reformation is not at variance with the intent of the donor as expressed in the trust document. The court finds that petitioner has failed to do so. Accordingly, petitioner’s request that the 1978 revised trust be reformed is hereby denied.